Darrel McMORRIS, Petitioner-Appellant,

v.

Thomas ISRAEL and Bronson C. LaFollette, Respondents-Appellees.

Nos. 79–2285, 80–1568.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 24, 1980.

Decided March 9, 1981.

As Modified on Denial of Rehearing and Rehearing En Banc May 7, 1981.

---

Charles Bennett Vetzner, Chief, Appellate Div., Wisconsin Public Defender, Madison, Wis., for petitioner-appellant.

Jerome S. Schmidt, Wisconsin Dept. of Wisconsin, Madison, for respondents-appellees.

Before SWYGERT, Circuit Judge, SKELTON, Senior Judge,* and CUDAHY, Circuit Judge.

CUDAHY, Circuit Judge.

Appellant McMorris was convicted of strong-armed robbery in Wisconsin state court. He now appeals from the denial of his petition for federal habeas corpus relief. 28 U.S.C. § 2254 (1976). McMorris challenges the Wisconsin procedure for the admission of polygraph evidence and alleges that the exclusion of exculpatory polygraph evidence denied him a fair trial in violation of his rights under the United States Constitution. We reverse and remand for further proceedings.

At petitioner's trial in state court, the prosecution presented only one witness, the victim, who identified the petitioner as the person who had grabbed him from behind, taken his wallet and pushed him to the ground. On cross-examination the victim conceded that it was dark at the time of the attack and that the whole incident was over very quickly. The victim also conceded that he had never seen the defendant before and that he was unable to give a description of his assailant. The petitioner took the stand and denied any involvement in the crime, claiming that the victim was mistaken in his identification of the petitioner as his assailant.

Realizing the importance of credibility in such a case, the petitioner sought to take a polygraph examination prior to trial. Evidence of a polygraph test taken by a defendant is admissible in Wisconsin under the conditions set forth in *State v. Stanislawski*, 62 Wis.2d 730, 216 N.W.2d 8 (1974). *Stanislawski* provides that expert opinion evidence as to polygraph tests is admissible with respect to the defendant's credibility when the following preconditions are met:

(1) That the district attorney, defendant and his counsel all sign a written stipulation providing for defendant's submission to the test and for the subsequent admission at trial of the graphs, and the examiner's opinion thereon on behalf of either defendant or the state.

(2) That notwithstanding the stipulation the admissibility of the test results is subject to the discretion of the trial court, i. e., if the trial judge is not convinced that the examiner is qualified or that the test was conducted under proper conditions he may refuse to accept such evidence.

(3) That if the graphs and examiner's opinion are offered in evidence the opposing party shall have the right to cross-examine the examiner respecting:

(a) the examiner's qualifications and training;

(b) the conditions under which the test was administered;

* The Honorable Byron G. Skelton, Senior Judge of the United States Court of Claims, is sitting by designation.

(c) the limitations of and possibilities for error in the technique of polygraphic interrogation; and

(d) at the discretion of the trial court, any other matters deemed pertinent to the inquiry.

(4) That if such evidence is admitted the trial judge should instruct the jury that the examiner's testimony does not tend to prove or disprove any element of the crime with which a defendant is charged but at most tends only to indicate whether at the time of the examination defendant was telling the truth. Further, the jury members should be instructed that it is for them to determine what corroborative weight and effect such testimony should be given.

62 Wis.2d at 742–43, 216 N.W.2d at 14 (footnotes omitted).[1]

In order to comply with *Stanislawski*, trial counsel for the petitioner contacted the prosecutor seeking a *Stanislawski* stipulation. After some initial indecision, the prosecutor refused to enter into the stipulation but gave no reason for his refusal. The request was renewed shortly before trial but the prosecutor again refused without explanation.

After petitioner was convicted, he filed a post-conviction motion in state court challenging the exclusion of the polygraph testimony. A hearing was held before the trial judge at which evidence was introduced as to a polygraph examination taken by petitioner after he was convicted. The results of the polygraph examination supported petitioner's claim that he had not committed the robbery. The trial court concluded that the polygraph evidence was both reliable and probative, "an important piece of evidence for the jury to consider and weigh in arriving at its verdict" in light of the evidence received at trial. The trial court reluctantly denied any relief, however, on the basis of Wisconsin law governing the admission of polygraph evidence. The Wisconsin Supreme Court affirmed in an unpublished per curiam opinion.[2]

The defendant then filed for habeas corpus relief in federal court. The district court denied relief because it found that the Wisconsin stipulation requirement did not deny the defendant due process of law. A motion for reconsideration was also denied and the petitioner now appeals from these rulings.

### I.  The Constraints Imposed by the Due Process Clause

Every state is generally free to exercise its sovereign prerogative as to the evidence it will admit in its courts. The federal constitution, however, imposes a limited restraint upon state evidentiary rules where exculpatory evidence is excluded by arbitrary state rules. *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). The genesis of this restriction is found in the defendant's sixth amendment right to "compulsory process for obtaining witnesses in his favor."[3] The Constitution imposes this limitation because the state may not deny an accused in a criminal trial the right to a fair opportunity to defend against the state's accusations. *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973). However, "the right of a defendant to present relevant and competent evidence is not absolute and many 'bow to accommodate other legitimate interests in the criminal trial process,'" *Hughes v. Mathews*, 576 F.2d 1250, 1258 (7th Cir.), *cert. dismissed*, 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1978)

---

1. The Wisconsin court adopted the formulation of the Arizona Supreme Court set out in *State v. Valdez*, 91 Ariz. 274, 283–84, 371 P.2d 894, 900 (1962) (en banc).

2. The State asserted at oral argument that petitioner had somehow waived his due process claim by failing to offer the testimony at trial or by failing to seek an order from the trial judge compelling the prosecutor to enter into the stipulation. The State raised these same alleged procedural irregularities before the Wisconsin Supreme Court. It is clear, however,

that petitioners due process claim is properly before us because the state courts reached the merits of the due process claim. *County Court of Ulster County v. Allen*, 442 U.S. 140, 154, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979); *Lefkowitz v. Newsome*, 420 U.S. 283, 292 n.9, 95 S.Ct. 886, 891 n.9, 43 L.Ed.2d 196 (1975).

3. U.S.Const. amend. VI. This right applies to the states through the due process clause of the fourteenth amendment. *Washington v. Texas*, 388 U.S. at 19, 87 S.Ct. at 1923.

(citing *Chambers*, 410 U.S. at 295, 93 S.Ct. at 1045), although the competing state interests must be substantial to overcome the claims of the defendant.[4] Our task is thus to evaluate the exculpatory significance of the proffered polygraph evidence [5] and then to balance it against the competing state interest in the procedural rules that prevented the defendant from presenting this evidence at his trial. *Government of the Virgin Islands v. Smith*, 615 F.2d 964, 972 n.10 (3d Cir. 1980). Petitioner challenges both the stipulation requirement in general and the refusal of the prosecutor to enter into the stipulation offered in this case. We shall review separately the state justifications both for the existence of the stipulation requirement and for the prosecutor's refusal to enter into the stipulation proffered here.[6]

## A. The Exculpatory Significance of the Defendant's Polygraph Evidence

It seems obvious that evidence of a favorable polygraph examination taken by the defendant would have been of great importance to the defense of the Wisconsin charge. The entire prosecution case rested on the testimony of the victim as to the identity of his assailant. Given the problems inherent in such an identification, *see* O'Connor, *"That's the Man": A Sobering Study of Eyewitness Identification and the Polygraph*, 49 St. John's L.Rev. 1, 26–27 (1974), particularly an identification based upon a short observation in the dark while being knocked to the ground, the state's case was far from overwhelming. The defendant took the stand and denied any involvement in the crime. His credibility was the primary issue before the jury, and the jury's verdict reflects its decision not to credit his testimony. Under these circumstances, a polygraph examination that bolstered the defendant's credibility might easily have been decisive in securing an acquittal. Although we do not wish to become embroiled in a "numbers game", we note that even the most ardent detractors from the validity of polygraph evidence concede

---

**4.** Westen, *The Compulsory Process Clause*, 73 U.Mich.L.Rev. 71, 156 (1973). *See also United States v. Nixon*, 418 U.S. 683, 712–13, 94 S.Ct. 3090, 3109–10, 41 L.Ed.2d 1039 (1974); *cf. Davis v. Alaska*, 415 U.S. 308, 319–20, 94 S.Ct. 1105, 1111–12, 39 L.Ed.2d 347 (1974) (the state's interest in protecting the anonymity of a juvenile offender must yield to the defendant's right to confront an adverse witness).

**5.** In *Hughes v. Mathews*, 576 F.2d 1258 (7th Cir.), *cert. dismissed*, 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1978), this court employed a different analysis to strike down the Wisconsin rule excluding psychiatric testimony on the issue of the defendant's specific intent. *Hughes* evaluated the relevance and competence of the excluded evidence under state law. 576 F.2d at 1256–58. *Hughes*, however, invalidated the Wisconsin rule because of its facial unconstitutionality. We are here adopting the much more limited position that the exclusion of the polygraph evidence under the particular circumstances of the instant case deprived this defendant of his constitutional rights. This approach is consistent with the Supreme Court's analysis of the specific circumstances in *Chambers* as well as with its more recent decision, *Green v. Georgia*, 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979), examining the exclusion of exculpatory evidence offered by the defendant. "[N]either *Chambers* nor *Washington* held the evidentiary rules in question facially unconstitutional." Clinton, *The Right to Present a Defense: An Emergent Constitutional Guarantee in Criminal Trials*, 9 Ind.L.Rev. 711, 807 (1976). We therefore decline to follow the *Hughes* analysis in the present context.

We would, however, reach the same result with respect to the one infirmity that we find if we tested the relevance and competence of the excluded polygraph evidence using the *Hughes* approach. Testimony as to the results of a polygraph examination conducted pursuant to a *Stanislawski* stipulation is both relevant and competent evidence under Wisconsin law. *Lhost v. State*, 85 Wis.2d 620, 646, 271 N.W.2d 121, 133 (1978) (quoted *infra* at page 15). The misgivings expressed by the court in *Lhost* as to the utility of polygraph evidence referred to the results of *unstipulated* examinations. By its failure to overrule *Stanislawski*, however, the court recognized that the results of stipulated examinations are sufficiently relevant and competent to be admitted into evidence. *Accord, United States v. Oliver*, 525 F.2d 731, 736–37 (8th Cir. 1975).

**6.** Defendant has framed his challenge to the Wisconsin stipulation rule in broad due process terms, as was done by the defendant in *Chambers*, and we shall deal with his contentions in that way. The more correct approach is, however, to analyze the questions under the sixth amendment right to compulsory process although the due process standards are similar if not identical. Westen, *Confrontation and Compulsory Process: A Unified Theory of Evidence for Criminal Cases*, 91 Harv.L.Rev. 567, 607–08 (1978).

a degree of reliability of 70% or higher for properly administered examinations.[7] Further, a large portion of this 30% "error" rate includes tests that yield inconclusive results—results that cannot fairly be described as "erroneous."[8] Where credibility is as critical as in the instant case, the circumstances are such as to make the polygraph evidence materially exculpatory within the meaning of the Constitution. *See* Westen, *Compulsory Process II*, 74 U.Mich.L.Rev. 191, 197 (1975).

## II. The Available State Justifications for *Stanislawski*

State and federal evidentiary rules excluding polygraph evidence have usually justified that exclusion by reference to two problems with polygraph evidence. Courts have been concerned with the reliability of the evidence itself as well as with the potential that juries may improperly regard polygraph evidence as infallible.[9] *United States v. Alexander*, 526 F.2d 161, 168 (8th Cir. 1975). Wisconsin, however, has adopted the seemingly commendable position that its evidentiary rules should not be tied to the conditions of another era when circumstances differed markedly from the present. Since their initial historic rejection in *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923),

> polygraph tests have moved from the 'twilight zone' of *Frye* to such degree of standing and scientific recognition that unconditional rejection of expert testimony based on polygraph testimony is no longer indicated.

*Stanislawski*, 62 Wis.2d 730, 741, 216 N.W.2d 8, 13 (1974).[10] We agree with the Wisconsin Supreme Court's assessment. Scientific developments seem to have made the polygraph more reliable.[11] In addition, science, for better or for worse, has become more a part of our daily lives. Scientific evidence, in turn, has become more a part of the ordinary trial so that jurors may be more likely to use polygraph evidence with discretion.[12]

A by-product of Wisconsin's liberal attitude regarding polygraph evidence, how-

---

**7.** *E. g.*, Kubis, *Comparison of Voice Analysis and Polygraph as Lie Detection Procedures*, 3 Polygraph 1, 39 (1974); Burkey, *The Case Against the Polygraph*, 51 A.B.A.J. 833, 856 (1965). By comparison the evidence unconstitutionally excluded in *Washington v. Texas* or *Webb v. Texas*, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972) (per curiam), appeared to be much less reliable than the polygraph evidence excluded in the instant case.

**8.** *See, e. g.*, Wicker, *The Polygraph Truth Test and the Law of Evidence*, 22 Tenn.L.Rev. 711, 713 (1953) (75 to 80% accurate—15 to 20% inconclusive—5% error).

**9.** The potential that the jury will improperly evaluate polygraph evidence presents the more important of the two objections. The degree of reliability goes more to the weight of the evidence. Certainly, as noted by the Eighth Circuit, polygraph examinations are reliable enough to pass the usual threshold for "relevant" evidence. *United States v. Oliver*, 525 F.2d 731, 737 n.11 (8th Cir. 1975); Fed.R.Evid. 401. A similar judgment is implicit in this court's consistent rulings that district courts have the discretion to admit polygraph evidence in a proper case. *United States v. Rumell*, 642 F.2d 213 (7th Cir. 1981); *United States v. Bursten*, 560 F.2d 779, 785 (7th Cir. 1977); *United States v. Infelice*, 506 F.2d 1358, 1365 (7th Cir. 1974).

**10.** The court in *Frye* ruled that scientific evidence, such as the results of a polygraph exam-

ination, may not be admitted into evidence unless the test has achieved "general acceptance" in its field. *Frye*, 293 F. at 1014. While often followed by the courts, the *Frye* standard for the admission of scientific evidence has been subjected to considerable criticism. *E. g.*, Giannelli, *The Admissibility of Novel Scientific Evidence*: Frye v. United States, *A Half-Century Later*, 80 Colum.L.Rev. 1197 (1980).

**11.** For example, the test given in *Frye* measured only blood pressure while the modern polygraph test records changes in blood pressure, respiration, pulse and galvanic skin response. Even the results of the technologically rudimentary polygraph test held inadmissible in *Frye*, however, were reliable enough to correctly show that an innocent man had been wrongly convicted of murder. Wicker, *The Polygraph Truth Test and the Law of Evidence*, 22 Tenn.L.Rev. 711, 715 (1953).

**12.** *United States v. Ridling*, 350 F.Supp. 90, 98 (E.D.Mich.1972). It is the "conviction of our time that the truth is more likely to be arrived at by hearing the testimony of all persons of competent understanding who may seem to have knowledge of the facts involved in a case, leaving the credit and weight of such testimony to be determined by the jury ...." *Washington v. Texas*, 388 U.S. 14, 22, 87 S.Ct. 1920, 1924, 18 L.Ed.2d 1019 (1967) (quoting *Rosen v. United States*, 245 U.S. 467, 471, 38 S.Ct. 148, 150, 62 L.Ed.2d 406 (1918)). *See also Jackson v. Garrison*, 495 F.Supp. 9, 11 (W.D.N.C.1979) (applying this principle to polygraph evidence).

ever, is that Wisconsin is unable to assert many of the traditional objections to polygraph evidence to sustain the two aspects of the *Stanislawski* stipulation requirement under review here. Other justifications have been argued, however, and we shall now consider the separate justifications asserted for each portion of the stipulation requirement.

### A. State Justifications for the Stipulation Requirement

The state justifies the requirement that the district attorney sign a written stipulation to the admission of the results of a polygraph test on the theory that a pre-test stipulation [13] increases the reliability of the test itself. Without a pre-test stipulation as to admissibility, the defendant could continue to take successive tests until one finally produced favorable results. The defendant could also take each test secure in the knowledge that the test results would neither be disclosed nor be used against him should they not turn out to be favorable. "This sense of security diminishes the fear of discovered deception, upon which an effective examination depends." *United States v. Wilson*, 361 F.Supp. 510, 514 (D.Md.1973); *See also United States v. Urquidez*, 356 F.Supp. 1363, 1366 (C.D.Cal. 1973). Academic commentators in the field have also recognized that stipulation requirements heighten the fears of the person undergoing the test about being detected and increase the reliability of the polygraph examination. Orne, *Implications of Laboratory Research for the Detection of Deception*, 2 Polygraph 169, 193–95 (1973); Abbell, *Polygraph Evidence: The Case Against Admissibility in Federal Criminal Trials*, 15 Am.Crim.L.Rev. 29, 35 (1977). Although we have no definitive view on the matter, as a matter of common sense we find this thesis quite reasonable.

Defendant, however, challenges the validity of this hypothesis with the citation of other academic works that reject the hypothesis or have found it unsubstantiated in laboratory tests.[14] As indicated, we do not wish to weigh the empirical evidence on this claim and, indeed, feel less than fully qualified to do so.

'It is one of the happy incidents of the federal system that a single courageous State may, if its citizens choose, serve as a laboratory; and try novel social and economic experiments without risk to the rest of the country.' Mr. Justice Brandeis, dissenting in *New State Ice Co. v. Liebmann*, 285 U.S. 262, 311, 52 S.Ct. 371, 386, 76 L.Ed.2d 747.

*Fay v. New York*, 332 U.S. 261, 296, 67 S.Ct. 1613, 1631, 91 L.Ed. 2043 (1947). While the matter is open to debate, there is a sufficient possibility of enhancing the reliability of polygraph examinations to support the *Stanislawski* pre-test stipulation requirement.

### B. The Prosecutor's Refusal to Enter Into the Stipulation

Our inquiry does not end here, however, for the defendant also challenges the refusal of the prosecutor to enter into the stipulation. An implicit aspect of the *Stanislawski* conditions, as construed in the decisions of the Wisconsin Supreme Court in the instant case and in *Lhost v. State*, 85 Wis.2d 629, 271 N.W.2d 121 (1978), is that the prosecutor has the power to refuse a defendant's offer to stipulate to the admission of the results of a polygraph examination without articulating his reasons. The effect of this rule is to give the prosecutor an unrestricted veto, for any reason or no reason at all, over the use of polygraph evidence by the defendant. An additional deleterious side effect of this policy is that, in the absence of any obligation to justify his

---

13. Defendant claims that the Wisconsin rule does not require that the stipulation be entered into prior to the defendant's submission to the test. This is contradicted, however, by a consistent series of comments on this point in the Wisconsin opinions on polygraph evidence. *State v. Schlise*, 86 Wis.2d 26, 42, 271 N.W.2d 619, 626 (1978); *Lhost v. State*, 85 Wis.2d 620, 649, 271 N.W.2d 121, 135 (1978); *Zelenka v. State*, 83 Wis.2d 601, 612, 266 N.W.2d 279, 284 (1978).

14. Tarlow, *Admissibility of Polygraph Evidence in 1975: An Aid in Determining Credibility in a*

*Perjury-Plagued System*, 26 Hastings L.J. 917, 959 & n.207 (1975); D. Raskin, G. Borland and J. Podlesny, *Validity and Reliability of Detection of Deception* at 21 (National Institute of Law Enforcement and Criminal Justice, June 1978). These works do not completely refute the thesis underlying the pre-test stipulation. Tarlow actually notes in another portion of his article that stipulations may indirectly increase the reliability of polygraph tests by leading the parties to agree on competent examiners. 26 Hastings L.J. at 956.

refusal, the prosecutor's veto evades meaningful judicial review.

Thus, the prosecutor in the instant case gave no reason for refusing to enter into the offered stipulation. The effect of this refusal was to preclude the defendant's use of the results of a polygraph test under any circumstances. Permitting this kind of refusal invites an abuse of the stipulation requirement. Prosecutors occupy an adversarial role and have adversarial responsibilities. Such untrammeled authority to exclude, without explanation, exculpatory defense evidence must be scrutinized carefully. The potential for abuse of an unrestricted veto is a particular problem in cases like the instant one where the prosecution has a relatively weak case and polygraph evidence might justifiably alter the outcome.[15]

The sole justification that we can perceive for giving the prosecutor the power to exclude polygraph evidence is to interpose an additional check on the determination that polygraph evidence is sufficiently trustworthy and capable of evaluation by the jury to be admitted in a particular case.[16] Such an additional check can certainly serve valid purposes. For example, the prosecutor may properly refuse to enter into a stipulation because the defendant proposed to use an unqualified examiner or to take the test under conditions not conducive to reliable results. The prosecutor might also justifiably refuse to enter into a stipulation if he has reason to believe that the defendant is "polygraph proof" because he had managed to evade detection of deceptive responses in a previous examination. The right of an accused to present evidence in his defense must still yield to "established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt or innocence." *Chambers*, 410 U.S. at 302, 93 S.Ct. at 1049. The prosecutor may thus perfectly validly refuse to stipulate when his veto is being used to increase the reliability of the trial process.[17] However, as an adversarial figure, the prosecutor's refusal to enter into a stipulation must be for justifiable reasons. Justifiable reasons in this context are reasons which go to the reliability of the test or to the integrity of the trial process, not reasons which consider merely the relative tactical advantages from the use of the evidence to the prosecution and the defense. To establish this justification, the prosecutor must articulate his reasons and the trial court must have appropriate powers of review.[18]

Although the prosecutor here stated no reasons for his refusal to stipulate to the

---

**15.** We must stress that there was no allegation of bad faith on the part of the prosecutor in the instant case. The Wisconsin Supreme Court in fact noted in its unpublished per curiam opinion that the prosecutor had acted in good faith. Good faith is not necessarily the issue, however. The issue is whether the prosecutor's adversarial role, and the tactical decisions attendant to it, are constitutionally compatible with an unexplained and unreviewable veto power.

**16.** In *Stanislawski*, the Wisconsin Supreme Court has made the judgment, which we find reasonable, that in most cases properly instructed juries will be able to accord polygraph evidence secured from stipulated examinations its appropriate weight in the trial process. Prior to *Stanislawski*, Wisconsin did not allow even the results of *stipulated* polygraph evidence. *LeFevre v. State*, 242 Wis. 416, 8 N.W.2d 288 (1943). We assume that in some relatively rare cases the prosecutor might refuse to stipulate to a polygraph examination on the grounds that the particular circumstances of that case would present an especial risk of jury confusion. *See also* note 17, *infra*.

**17.** In other circumstances, valid state interests unrelated to the integrity of the trial process might be sufficient to prevent the use of evidence offered by the defendant. *See Washington v. Texas*, 388 U.S. 14, 23 n.21, 87 S.Ct. 1920, 1925 n.21, 18 L.Ed.2d 1019 (1967).

**18.** We are not apparently confronted here with the potential case of rejection of all polygraph evidence in all cases by the district attorney of a particular county. Such a situation would not appear to involve refusals by the prosecutor to stipulate "for purely tactical reasons"— the subject of this opinion. Nonetheless, this sort of practice may raise both due process and equal protection problems. *But see State v. Mendoza*, 80 Wis.2d 122, 186, 258 N.W.2d 260, 288 (1977) (Robert W. Hansen, J., dissenting):

If any district attorney in [Wisconsin] is not convinced of the reliability of polygraph testing, and not similarly convinced of the qualifications of the examiner named to do the testing, there will be and can be no polygraph test results admitted in criminal cases in his county while he is district attorney. All he has to do is refuse to stipulate to the test being given and the results of the test admitted. If he wants the door locked, he can lock it.

examination, the Wisconsin Supreme Court felt that the prosecutor's refusal was justified because it prevented "collateral" issues surrounding the testimony of an examiner as to the results of a polygraph examination from overly complicating the jury's decision. But, given the facts of the instant case, such a rationalization is simply not persuasive. This was a quite simple case with only one prosecution witness. The collateral issues attendant on the introduction of polygraph evidence would thus seem not to have been too confusing or complex for the jury to digest while, at the same time, retaining their focus on the direct evidence of the defendant's involvement in the crime. The critical importance of the credibility determination in this case also renders the polygraph evidence so material that the very limited potential for confusion from the use of the defendant's polygraph evidence should not be sufficient to block the use of this evidence for unstated and potentially inappropriate reasons. While Wisconsin has reached a contrary conclusion on this question, its judgment as to the precise contours of the stipulation process must still satisfy the Constitution. *See Galloway v. Brewer*, 525 F.2d 369 (8th Cir. 1975), *cert. denied*, 424 U.S. 974, 96 S.Ct. 1478, 47 L.Ed.2d 744 (1976).

We must stress, however, that ultimately our decision is closely linked to the peculiarities of the Wisconsin stipulation rule. The

Wisconsin rule is not *solely* a "consent" rule whereby the parties waive the benefit of a rule of evidence barring the introduction of polygraph evidence.[19] Stipulation rules based on consent principles reflect state judgments that polygraph evidence is too unreliable or too capable of misinterpretation to be admitted at trial but recognize that the parties may waive their evidentiary objections.[20] *See State v. McNamara*, 252 Iowa 19, 104 N.W.2d 568 (1960). In contrast, as stated in *Lhost v. State*, 85 Wis.2d 620, 646, 271 N.W.2d 121, 133 (1978), "[t]he Wisconsin stipulation rule pronounced in *Stanislawski* is designed to assure the fairness and reliability in the introduction of polygraph results in evidence." Indeed, the change in Wisconsin law allowing the introduction of polygraph testimony rests on the adoption of the premise in *Stanislawski* that polygraph examinations have become more reliable and have achieved such a degree of scientific recognition that their unconditional rejection is no longer appropriate. *Stanislawski*, 62 Wis.2d at 741, 216 N.W.2d at 13. Wisconsin's divergence from the "consent" approach is further illustrated by the fact that both parties may, subsequent to the stipulated examination, contest the admission of the evidence in a pre-admission hearing. *State v. Mendoza*, 80 Wis.2d 122, 258 N.W.2d 260 (1977). Our decision is thus consistent with the philosophy underlying the Wisconsin stipulation requirement.

**19.** Admittedly, the Wisconsin rule does have some consensual elements. *See State v. Craft*, 99 Wis.2d 128, 134, 298 N.W.2d 530, 532 (1980); *Lhost v. State*, 85 Wis.2d 620, 646, 271 N.W.2d 121, 133–34 (1978). The Wisconsin rule departs from what we describe as the "consent" approach, however, because Wisconsin believes that polygraph evidence admitted pursuant to a *Stanislawski* stipulation is both reliable and capable of informed consideration by the jury. While Wisconsin is justifiably reluctant to admit the results of *unstipulated* polygraph examinations, *see supra* at 9–11, it adopted in *Stanislawski* a much more positive approach with respect to the results of examinations conducted under conditions established pursuant to pre-test stipulations. The fundamental shift accomplished by *Stanislawski* is demonstrated by the fact that, before *Stanislawski*, even stipulated examinations were deemed incompetent. *See note 16, supra*. Characterizing the stipulation as a "waiver", *see Craft*, 99 Wis.2d at 134, 298 N.W.2d at 532, does not affect the thesis underlying *Stanislawski* that the results of stipulated polygraph examinations are competent evidence; the "waiv-

er" consists in the agreement of the parties to forego otherwise potentially valid objections to the admission of the results of the examination such as, for example, that the examiner was not qualified. The evidence is inadmissible in the absence of the stipulation because it is not sufficiently reliable without the stipulation. *Lhost*, 85 Wis.2d at 645, 271 N.W.2d at 133. This approach does not mean that Wisconsin is a pure "consent" state (where stipulated polygraph evidence, even if admitted, would not be regarded as competent).

**20.** A state with a "consent" stipulation requirement would be able to assert, as a justification for the exclusion of the evidence, its determination that polygraph evidence is too likely to be misused by the jury. The same justification would be available to support a state rule that absolutely barred the use of polygraph evidence. Of course, we express no opinion on whether this justification would be sufficient to sustain the total exclusion of polygraph testimony. We note these alternatives only to point out the limited scope of this decision.

ing the introduction of polygraph testimony rests on the adoption of the premise in *Stanislawski* that polygraph examinations have become more reliable and have achieved such a degree of scientific recognition that their unconditional rejection is no longer appropriate. *Stanislawski*, 62 Wis.2d at 741, 216 N.W.2d at 13. Wisconsin's divergence from the "consent" approach is further illustrated by the fact that both parties may, subsequent to the stipulated examination, contest the admission of the evidence in a pre-admission hearing. *State v. Mendoza*, 80 Wis.2d 122, 258 N.W.2d 260 (1977). Our decision is thus consistent with the philosophy underlying the Wisconsin stipulation requirement.

▉ In essence, therefore, we find the prosecutor's veto of the test in the instant case to be constitutionally impermissible because he stated no reasons which might be reviewed by the trial court. From all that appears, he was acting solely for tactical reasons in the belief that a test would not be helpful to his case. If the prosecutor refuses *and states reasons*, it then becomes the duty of the court to determine whether the reasons offered rise above the purely tactical considerations present in a given case. Certainly, no proper state purpose is served by allowing a purely tactical veto power. We do not hold that Wisconsin may not absolutely refuse to admit polygraph evidence, or that a judge may not refuse to admit polygraph evidence in a particular case; we merely hold that it offends due process for the prosecutor, as an adversary, to exercise an unrestricted veto—unrelated on the record to any reasons appropriate to

the stipulation requirement—over the significantly exculpatory polygraph evidence in the instant case.

We therefore hold that the refusal of the prosecutor to enter into the stipulation offered here may have violated the petitioner's right to be tried in accordance with the due process clause. We remand this action to the district court, however, for further proceedings to assess whether the prosecutor had valid reasons for refusing to enter into the stipulation offered by the defendant. If the refusal was unjustified,[21] the petition for writ of habeas corpus should be granted.[22]

**REVERSED AND REMANDED.**

---

**21.** Even if the prosecutor argues that his refusal was based on otherwise justifiable reasons such as the failure of the defendant to propose using a qualified examiner, the district court should grant the writ of habeas corpus unless it determines that the defendant would have been unable to cure the objection had he been informed of it prior to the Wisconsin trial. Obviously, this problem is unique to the instant case and would presumably not be involved in future cases.

**22.** In the event that Wisconsin would subject petitioner to another trial, the results of the polygraph examination taken by the defendant after his conviction in state court would not be admissible under *Stanislawski* because there

was no pre-test stipulation. The defendant would have the opportunity, of course, to seek a stipulation as to a future polygraph examination. It would be unfair under the particular circumstances of this case, however, for the petitioner to be denied any opportunity to take a new polygraph examination pursuant to a *Stanislawski* stipulation because of the asserted effect of the earlier examination upon the reliability of the subsequent examination. *See Lhost v. State*, 85 Wis.2d 620, 643 n.14, 271 N.W.2d 121, 132 n.14 (1978). Although we refrain from evaluating this alleged effect, we doubt that it is present where nearly five years have passed since the first examination.