The petitioner was indicted for the offense of robbery in the first degree. Prior to his trial, he offered to stipulate to the introduction into evidence of a polygraph examination. The State refused to stipulate. Following a trial, the defendant was convicted and sentenced. He appealed the judgment of conviction to the Court of Criminal Appeals which affirmed without opinion. 438 So.2d 769. Petitioner appropriately utilized Rule 39 (k), Alabama Rules of Appellate Procedure (A.R.A.P.), to supply to that court an additional statement of facts. His application for a rehearing was denied. 443 So.2d 66. This Court granted a writ of certiorari to resolve two questions posed by the petitioner: (1) Whether the trial court, in the admission of certain evidence discussed below, erred to reversal in violating the business reports exception of the rule against hearsay; and (2) Whether the decision of the State to refuse to stipulate to the admission of the proffered polygraph examination constituted reversible error.
 I.
The facts furnished under Rule 39 (k), and verified by the transcript of the evidence, *Page 696 
disclose the following exchanges during the examination of one Angela Golden, cashier of the service station allegedly robbed. That examination was being conducted to determine the amount of money missing after the robbery:
 "Q. Do you know how much money was in those money bags?
"A. No, I don't know how much was all in there.
"Q. Okay, $1,318.22, does that sound about —
 "MR. ALLENSTEIN: We object to the leading, now, Judge.
"THE COURT: Don't lead.
 "Q. Later, did you learn how much money was in the —
"A. Oh, —
 "MR. ALLENSTEIN: We object to that, that would be hearsay, what she learned.
 "ASSISTANT DISTRICT ATTORNEY HART: Your Honor, she worked there, she was the cashier on duty that night.
 "MR. ALLENSTEIN: She would have to know by personal knowledge or somebody else would have to be brought in —
 "THE COURT: I will sustain it. You determine how she learned. You can lay that.
 "Q. Did you later learn how much money was in the two money bags?
 "MR. ALLENSTEIN: Let me ask her on voir dire, Your Honor.
"THE COURT: All right.
"VOIR DIRE EXAMINATION BY MR. ALLENSTEIN:
 "Q. Did somebody tell you later on how much money was in the bags?
"A. Yes, sir.
 "MR. ALLENSTEIN: I object to her answering the question. Hearsay.
"THE COURT: All right.
 "(Whereupon, Assistant District Attorney Hart continued his direct examination.)
 "Q. Did you ever see any store record on how much money was in the two money bags that night?
"A. Yes, sir.
 "Q. And did you help keep the store records when you were there as far as —
 "A. No, not — huh uh. Not pertaining to the money, and all of that.
 "Q. But, you later saw store records — did the store records you saw show how much money was in the two money bags?
"A. Yes, sir, after they took inventory.
 "ASSISTANT DISTRICT ATTORNEY HART: Your Honor, based on that, since she was a store employee we submit that she did know enough about the value of the money bags to testify about it.
 "MR. ALLENSTEIN: There would be higher and better evidence. That would be the store record, and they have got to be properly qualified as store records. She doesn't keep them and they are not under her control.
 "ASSISTANT DISTRICT ATTORNEY MARTIN: Your Honor, may I ask a question on voir dire? It might clear it up.
"THE COURT: Yes, sir.
 "VOIR DIRE EXAMINATION BY ASSISTANT DISTRICT ATTORNEY MARTIN:
 "Q. Were you the only employee in charge of that station at the time?
"A. Yes, sir.
 "Q. Okay, and everything in the store was in your care at that time?
"A. Yes, sir.
 "(Whereupon, Assistant District Attorney Hart continued his direct examination.)
"Q. Did the store records reflect that 1800 and —
 "MR. ALLENSTEIN: We object to leading again, Your Honor. Again, the higher and better evidence would be the records.
"THE COURT: I sustain as to leading.
 "Q. Mrs. Golden, did the store records reflect — what did the store records reflect — *Page 697 
 "MR. ALLENSTEIN: We are going to object to that. There is still higher and better evidence, the store records.
 "THE COURT: I believe she testified that she was the keeper of the records. So, overruled.
 "Q. What did the store records reflect about how much money was taken that night?
"A. It was over $1300 —"
This testimony clearly established that the witness had no personal knowledge of the amount of the service station's loss. Resort was had, therefore, to the fact that the witness had seen store records which disclosed that loss, and thus her testimony as to what those records contained was admitted, over objection, without production of the records themselves.
In Gamble, McElroy's Alabama Evidence § 254.01 (3) (3d ed. 1977), the pertinent rule on admitting the contents of business records is succinctly stated:
 "Testimony by any witness, frequently the custodian of the record, that the document now exhibited to him
is a record of the business; that he knows the method (i.e., the standard operating procedure) used in the business of making records of the kind now exhibited to him; and that it was the regular practice of the business to make records of such kind and to make them at the time of the event recorded or within such specified period thereafter as could be found by the trier of the fact to be reasonable, is a sufficient authentication of the record to require its admittance in evidence."
See also Rule 44, A.R.Civ.P. In this instance, there was a complete absence of any attempt to qualify the record alluded to by the witness under this rule of evidence.
Apparently recognizing this dilemma, the State argues that the procedure utilized was proper under the theory of "present recollection revived." This position overlooks the fact that (1) no memorandum or record was used here to refresh the witness's errant memory, and (2) the witness here testified not to an independent knowledge of the fact but to the contents of a record not in evidence. Cf. Gibson v. State, 347 So.2d 576
(Ala.Cr.App. 1977).
Having recognized the error in the admission of the testimony pertaining to the amount of money taken, however, we have concluded that this error was not prejudicial to the substantial rights of the accused. Mikell v. State, 242 Ala. 298, 5 So.2d 825 (1942). The indictment charged the defendant with taking $1,322.40. The evidence disclosed that the petitioner obtained $4.00 from the complaining witness and two bags containing money. In a robbery conviction, the amount of money stolen is not an essential element of the charge. Code of 1975, § 13A-8-40, et seq. Hence, the theft of money having been proved under the circumstances proscribed by statute, no prejudice has resulted to the petitioner on account of the procedure used by the prosecutor to prove the amount charged in the indictment.
 II.
On the second issue, the petitioner finds support in a federal circuit court decision, McMorris v. Israel,643 F.2d 458 (7th Cir. 1981). There, the prosecution's case rested solely upon the testimony of the victim to identify the defendant, who denied any involvement in the crime. The victim had identified the defendant "upon a short observation in the dark while being knocked to the ground." The Seventh Circuit Court of Appeals held that the defendant's offer to stipulate to the admission of his polygraph examination could not have been summarily refused by the prosecution. That court looked favorably upon the Wisconsin court's recognition of polygraph results in State v. Stanislawski, 62 Wis.2d 730, 216 N.W.2d 8
(1974), holding that they were admissible by stipulation under certain guidelines. At bottom, the favorable position of the Wisconsin court upon the admission of polygraph examinations stems from the premise adopted by that court that "[s]cientific developments seem to *Page 698 
have made the polygraph more reliable." McMorris, 643 F.2d at 462.
Criticizing the unrestricted veto enjoyed by a prosecutor which would prevent the use of the polygraph test, the Seventh Circuit Court of Appeals stated, at 464:
 "The sole justification that we can perceive for giving the prosecutor the power to exclude polygraph evidence is to interpose an additional check on the determination that polygraph evidence is sufficiently trustworthy and capable of evaluation by the jury to be admitted in a particular case. Such an additional check can certainly serve valid purposes. For example, the prosecutor may properly refuse to enter into a stipulation because the defendant proposed to use an unqualified examiner or to take the test under conditions not conducive to reliable results. The prosecutor might also justifiably refuse to enter into a stipulation if he has reason to believe that the defendant is `polygraph proof' because he managed to evade detection of deceptive responses in a previous examination. The right of an accused to present evidence in his defense must still yield to `established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt or innocence.' Chambers [v. Mississippi], 410 U.S. [284] at 302, 93 S.Ct. [1038] at 1049 [35 L.Ed.2d 297]. The prosecutor may thus perfectly validly refuse to stipulate when his veto is being used to increase the reliability of the trial process. However, as an adversarial figure, the prosecutor's refusal to enter into a stipulation must be for justifiable reasons. Justifiable reasons in this context are reasons which go to the reliability of the test or to the integrity of the trial process, not reasons which consider merely the relative tactical advantages from the use of the evidence to the prosecution and the defense. To establish this justification, the prosecutor must articulate his reasons and the trial court must have appropriate powers of review." (Footnotes omitted.)
And finally, the Seventh Circuit Court of Appeals cogently observed that its decision "is closely linked to the peculiarities of the Wisconsin stipulation rule," which is unlike a "consent" rule whose effect is to simply allow the parties to waive the benefit of an evidentiary rule barring polygraph evidence.
In contradistinction, the results of polygraph examinations are, in general, inadmissible in Alabama. Stewart v. State,398 So.2d 369 (Ala.Cr.App. 1981). They are admissible, however, upon stipulation of the parties, subject to certain conditions which relate to the accused's knowledge of his rights thereunder and the trial court's discretion relating to the conduct of the test itself. See Wynn v. State, 423 So.2d 294,299-300 (Ala.Cr.App. 1982). Nothing in that case, however, nor in any other Alabama case to which we have been cited, requires the prosecutor's consent to an offer of the accused to stipulate to the admission of the results of the accused's polygraph examination. As yet, Alabama has not adopted the premise of Wisconsin that such tests have achieved such a degree of reliability and scientific recognition "that their unconditional rejection is no longer appropriate." McMorris, 643 F.2d at 465.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.