**Keith DEAN and Cornelius Harper,**
**Petitioners-Appellees-Cross-Appellants,**

v.

**Jack DUCKWORTH,**
**Respondent-Appellant-Cross-Appellee.**

**Nos. 83–1664, 83–1765.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 2, 1983.

Decided July 31, 1984.

Rehearing and Rehearing En Banc
Denied Oct. 23, 1984.

Certiorari Denied Feb. 19, 1985.
See 105 S.Ct. 1188.

**368**

Tony L. Axam, Franklin & Axam, Atlanta, Ga., for petitioners-appellees-cross-appellants.

David A. Arthur Deputy Atty. Gen., Indianapolis, Ind., for respondent-appellant-cross-appellee.

Before CUMMINGS, Chief Judge, CUDAHY, Circuit Judge, and MAROVITZ, Senior District Judge.[*]

MAROVITZ, Senior District Judge.

This is an appeal from an order of the District Court, 559 F.Supp. 1331, granting Dean and Harper's petition for a writ of habeas corpus. The District Court held that petitioners received ineffective assistance of counsel caused by a conflict of interest on the part of their defense counsel. After a careful review of the record, we reverse.

During the early morning hours on September 13, 1977, Lannon Sulkko, a 29-year-old white woman, was abducted from her driveway at gunpoint by two black males. She was driven some distance from her home and then raped in the back seat of what turned out to be an automobile stolen during the evening hours of September 12, 1977. She was robbed of her money and then returned to an area near her house.

In the course of the subsequent police investigation Mrs. Sulkko was shown a number of mug shots as well as photographs from three local high school yearbooks. Outside of the yearbooks, she was shown 39 pictures, 34 of which were in black and white, the remaining five in color. Three of the five color photographs were Polaroid prints. Two of those prints were pictures of the defendants Keith Dean and Cornelius Harper. During the process of viewing the photographs Mrs. Sulkko selected several pictures of individuals who possessed characteristics or features similar to those of her attackers. Among the individuals so selected were Richard Pickett and Larry Harper, older brother of Cornelius Harper. The pictures of petitioners were the only ones that Mrs. Sulkko picked out as actually portraying

---

[*] The Honorable Abraham Lincoln Marovitz, Senior District Judge for the Northern District of Illinois, is sitting by designation.

the attackers. No identification line-up was ever conducted, apparently because the petitioners were juveniles. Mrs. Sulkko did view and identify the petitioners at a juvenile hearing. The petitioners were the only black males in the room at that time.

After their arrests, at the request of their defense attorney, the petitioners submitted to *ex parte* polygraph examinations. The results indicated that one of the petitioners knew something about the incident, but were inconclusive as to the other petitioner.

After a series of delays, mostly attributable to the defense, the petitioners were brought to trial on April 30, 1979. Both were represented by the same attorney. They were found guilty and sentenced to life imprisonment, which at that time was a mandatory sentence for the crime of kidnapping under Indiana law. Two weeks after the guilty verdict Richard Pickett and Larry Harper told defense counsel that they were the individuals involved in the incident. They admitted stealing the car, but claimed that Mrs. Sulkko consented, and even requested to have sex with them. Larry Harper and Richard Pickett then submitted to *ex parte* polygraph examinations, the results of which indicated that they were telling the truth when they stated that they had sexual intercourse with Lannon Sulkko, and that they were not telling the truth when they stated that it was not by force. A second *ex parte* polygraph examination· of the petitioners was then conducted. The results of this examination indicated that they were telling the truth when they stated that they had not engaged in sexual intercourse with Mrs. Sulkko.

Based upon the above information, defense counsel filed a motion to correct errors. Attached to the motion was a transcript of Richard Pickett and Larry Harper's statements as given to defense counsel. At the hearing on the motion Larry Harper testified that he had engaged in sexual intercourse with Mrs. Sulkko, but refused to answer many questions on Fifth Amendment grounds. Richard Pickett refused to answer any questions. Larry Harper did state that he had told both petitioners about the incident the day. after it happened. The trial judge denied the motion based upon the fact that the petitioners had failed to produce any "newly discovered evidence". Additionally, the judge noted that under Indiana law, the results of polygraph examinations are inadmissible absent a stipulation between the parties. *Vacendak v. State*, 264 Ind. 101, 340 N.E.2d 352 (1976). Petitioners then appealed directly to the Supreme Court of Indiana which unanimously affirmed the convictions. *Dean v. State*, 433 N.E.2d 1172 (Ind.1982). Having exhausted their available state court remedies, petitioners then filed a petition for habeas corpus relief in the District Court. Nine issues were raised in the petition. The District Court ruled that eight of the issues were "wholly without merit", and then addressed the lone issue of whether the joint representation of the petitioners at trial violated their right to the effective assistance of counsel. After reviewing the record, the District Court reached the conclusion that petitioners' counsel had an actual conflict of interest that adversely affected his performance and therefore issued the writ. Respondent Duckworth appeals from this decision while petitioners cross-appeal from the District Court's decision that the other eight issues raised in the petition were wholly without merit.

## I

The Sixth Amendment to the United States Constitution guarantees to a defendant counsel that is unimpaired by a conflict of interest. *Glasser v. United States*, 315 U.S. 60, 70, 62 S.Ct. 457, 464, 86 L.Ed. 680 (1942). Of course, the mere fact that two or more defendants are jointly represented by a single attorney is not a *per se* violation of this constitutional guarantee. "To establish a constitutional violation, a defendant who raised no objection 'at trial must demonstrate that an actual conflict of interest adversely affected his lawyers' performance.'" *Wilson v. Mor-*

*ris,* 724 F.2d 591, 593 (7th Cir.1984) (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980)).

Neither petitioners nor their trial counsel objected to proceeding to trial without separate counsel. Nor did trial counsel ever indicate to the court that he foresaw the possibility of a conflict of interest. Thus, under *Cuyler* it was incumbent upon petitioners to establish the existence of an actual conflict of interest and that the conflict adversely affected the performance of their trial attorney.

In reaching the conclusion that a constitutional violation occurred the District Court did not specifically delineate the actual conflict of interest. Instead, relying upon *United States ex rel. Sullivan v. Cuyler,* 553 F.Supp. 1236, 1242 (E.D.Pa. 1982), the Court stated that the concepts of actual conflict and adverse affect were merged and that an actual conflict adversely affecting counsel's performance appears on the face of the record. The basis for this statement is the District Court's conclusion that the petitioners did not in fact have a joint defense. At trial both petitioners testified that they spent the evening of September 12, 1977 together and among friends, but that each had already gone to his own respective home by the time that the kidnap, rape and robbery occurred. Thus, the District Court reasoned that because petitioners did not claim to have spent the entire night of September 12–13, 1977 together, their alibis ceased to be joint at precisely the most critical juncture in their defense.

■ While we agree that petitioners' alibi defense may have ceased to be joint at the time they left each other's company, we do not agree that this, by itself, establishes that an actual conflict of interest adversely affected their attorney's performance. Petitioners both testified that they spent the evening of September 12th together at a friend's house. Petitioners, the friend and the friend's mother all testified that they specifically remembered that day because Cornelius Harper had injured his lip in a fight on a school bus earlier that afternoon.

This alibi, and with it the credibility of petitioners and their witnesses, was destroyed by the testimony of Harper's high school principal who stated that the injury to Harper's lip occurred not on September 12th but five days earlier. Petitioners now argue that this impeachment of Harper's alibi created prejudice in the minds of the jurors against Dean, and that defense counsel should have asked for an instruction that the principal's testimony be admitted against Harper only but was unable to do so because he was also representing Harper. This argument is totally without merit. Both Harper and Dean, as well as their supporting witnesses, testified that Harper injured his lip on September 12th. Dean actually described the fight in some detail. Thus the impeachment testimony was certainly admissible against both petitioners. Nowhere in our review of the record have we discovered any characteristics of a conflict of interest. We found no action or inaction by defense counsel that was favorable to one defendant at the expense of the other. *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). All of the evidence presented by the prosecution was offered against both petitioners. There was nothing presented that would implicate one more than the other thereby putting defense counsel into the position of having to choose the interest of one over the other. We reject the conclusion inherent in the District Court's opinion that because petitioners did not have identical defenses they necessarily had conflicting defenses. In short, we find no evidence of any actual conflict of interest or any adverse affect upon trial counsel's performance.

## II

Having determined that the District Court erred in concluding that petitioners' trial counsel acted under a conflict of interest, we must now review the eight claims for relief raised in the petition for habeas corpus which the District Court dismissed as wholly without merit. We agree that these issues are without merit but for pur-

poses of clarity will address petitioners' claims that they were denied a speedy trial and that they were denied due process of law when the prosecutor refused to stipulate to the admission of the polygraph results and when the court refused to grant use immunity to Richard Pickett and Larry Harper.

■ The Sixth Amendment guarantees a defendant a right to a speedy trial. *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). To determine whether there has been a violation of that right, the court must consider the length of the delay, the reason for the delay, the defendant's assertion of his right and the prejudice to the defendant. *Id.* at 530, 92 S.Ct. at 2192.

The record in this case reveals that petitioners were incarcerated for 17 months prior to trial. At no time during those 17 months did petitioners or their counsel attempt to assert their right to a speedy trial. The reason is apparent. The vast majority of the delays and continuances were had with the knowledge and agreement of the petitioners and at the request of their counsel. The initial delays were the result of counsel's difficulties in obtaining a transcript of the juvenile waiver hearing, and because counsel felt that he was not prepared for trial. Later, due to eye surgery he was unavailable for trial. When counsel's recovery took longer than expected his partner was called into the case with petitioners' approval.

Petitioners now argue that they were severely prejudiced by the long delay. When arrested they were 14 and 15 years old and weighed 40 pounds less and were 6 inches shorter than when they went to trial. Immediately after the incident Mrs. Sulkko indicated that her attackers were around 17–20 years of age and were 5 feet 6 inches to 5 feet 7 inches in height. At the time of the arrest Dean's height was 5 feet 1 inch and Harper's was 5 feet 4 inches. Thus, petitioners argue that during pre-trial incarceration they actually grew into the description given by Mrs. Sulkko. However, at trial Mrs. Sulkko testified that the original description taken down by the investigating officer was in error as to the height and ages of her assailants and that she explained this to the investigating detective the following day. Detective Mitchell's testimony corroborated Mrs. Sulkko's on this point.

■ In our opinion, the fact that petitioners never asserted their right and that the delays and continuances were had with their knowledge and at their attorney's request outweighs any possible prejudice created by the delay. In this regard we note that the prejudice was minimized by defense counsel when he had the petitioners' heights measured shortly after their incarceration.

■ Finally, petitioners maintain that they were denied due process of law when the prosecutor refused to stipulate to the admission of the polygraph results and when the court refused to grant use immunity to Richard Pickett and Larry Harper. As noted previously, the polygraph results were offered to the court in a motion to correct errors based upon newly discovered evidence. The court refused to accept the results into evidence because they were inadmissible under Indiana law absent a stipulation or waiver. The court also ruled that they were not newly discovered evidence based on Larry Harper's statement that he had told both petitioners about the incident the day after it happened. The petitioners now argue that the failure of the prosecution to enter into a stipulation violated the due process clause and denied them a fair trial. They rely on this Court's opinion in *McMorris v. Israel,* 643 F.2d 458 (7th Cir.1981). In *McMorris* we held that a prosecutor's refusal to enter into a written stipulation with respect to the admission of exculpatory polygraph evidence without giving reasons for the refusal may violate the due process clause because of the potential for abuse by the prosecution. Thus, a prosecutor may refuse to enter the stipulation only for justifiable reasons. *Id.* at 464. In the instant case, the prosecution refused to enter into a stipulation because the State of Indiana does not recognize the

reliability of polygraph evidence. In *McMorris* we noted that our decision was closely linked to the peculiarities of the Wisconsin stipulation rule. The Wisconsin Supreme Court decision that enunciated the stipulation rule, *State v. Stanislowski*, 62 Wis.2d 730, 216 N.W.2d 8 (1976), adopted the premise that polygraph examinations have become more reliable and have achieved such a degree of scientific recognition that their unconditional rejection is no longer appropriate. *Id.* at 741, 216 N.W.2d 8. Petitioners have presented no authority, and we have found none, to suggest that Indiana has also adopted this premise. Indeed, our research leads to the contrary conclusion. *See Minneman v. State*, 441 N.E.2d 673, 678 (1982). Thus, *McMorris* is inapplicable because unlike Wisconsin, Indiana has not recognized the reliability of polygraph evidence. Additionally, even if *McMorris* was applicable, the polygraph results would not have warranted the granting of a new trial because the trial judge found that they did not represent newly discovered evidence as required by Indiana law. *Vacendak v. State*, 340 N.E.2d 352. A defendant in possession of evidence who fails to present it at trial may not thereafter use it as a basis for a new trial. *Riddle v. State*, 273 Ind. 112, 402 N.E.2d 958, 961 (1980).

Petitioners also maintain that they were denied due process of law when the court refused to grant Richard Pickett and Larry Harper use immunity. They have presented virtually no support to establish that the court actually had the authority to grant their request. We have repeatedly held that immunization is a prerogative of the Executive Branch of government and not the Judicial Branch. *United States v. Flomenhoft*, 714 F.2d 708 (7th Cir.1983). Further, the federal immunization statutes were not designed to protect defendants. *United States v. Frans*, 697 F.2d 188 (7th Cir.1983). Thus, if petitioners had been tried in federal court the judge would have had no authority to grant or even request immunization. *Id.* We have found no authority suggesting that Indiana courts have some sort of

inherent power to grant immunization to defense witnesses. Nor have petitioners presented any evidence that the prosecutor clearly abused his discretion in refusing to grant immunity, thereby violating the due process clause. There has been no showing of bad motives on the part of the prosecutor or that he intended to distort the fact-finding process. Additionally, everything that Richard Pickett and Larry Harper would have testified to was already before the court in the form of exhibits attached to the motion to correct errors. The court examined the exhibits and thus had the opportunity to review any exculpatory evidence. Again, as with the polygraph results, Richard Pickett and Larry Harper's testimony would not have constituted newly discovered evidence and under Indiana law would not have been sufficient to support the granting of a new trial.

## Conclusion

Our review of the record leads us to conclude that petitioners' counsel did not encounter an actual conflict of interest that adversely affected his performance and we therefore reverse the District Court's decision on that issue. Further, despite the excellent and vigorous efforts by petitioners' present counsel to persuade us otherwise, we agree with the District Court that the other eight claims raised in the petition are without merit. The decision of the District Court issuing the writ of habeas corpus is reversed.

REVERSED.