Kenneth **THORNTON**, Petitioner,

v.

Jack R. **DUCKWORTH**, Respondent.

No. S 85–621.

United States District Court,
N.D. Indiana,
South Bend Division.

June 24, 1986.

Kenneth Thornton, pro se.

Sabra A. Weliever, Deputy Atty. Gen., Indianapolis, Ind., for respondent.

## MEMORANDUM AND OPINION *

ALLEN SHARP, Chief Judge.

### I.

The petitioner, Kenneth Thornton, filed this petition under 28 U.S.C. § 2254 on October 29, 1985 alleging that he is now an inmate at the Indiana State Prison in Michigan City, Indiana, having been convicted in

\* AFFIRMED BY UNPUBLISHED ORDER

the Marion Criminal Court, Division II, of first degree murder on September 21, 1972. That conviction was affirmed by the Supreme Court of Indiana in a unanimous opinion authored by Justice DeBruler and found at *Martin v. State,* 262 Ind. 232, 314 N.E.2d 60 (1974), opinion on rehearing, 262 Ind. 232, 317 N.E.2d 430 (1974), *cert. denied,* 420 U.S. 911, 95 S.Ct. 833, 42 L.Ed.2d 841 (1975). The findings of fact referenced in the opinions of the Supreme Court of Indiana are entitled to a presumption of correctness under the authority of *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

The state court record has been filed pursuant to *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) and carefully examined here. There has been full and complete compliance with the mandates of *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir.1982). Kenneth Thornton has also been granted the services of a lay legal assistant in the person of Joseph M. Kalady who is an experienced lay advocate who regularly assists prisoners appearing pro se in cases before this court.

There are a number of issues raised which the court will deal with fully.

This petitioner, Kenneth Thornton, was tried before a jury and Judge Saul I. Rabb in the Marion Criminal Court, Division II, for first degree murder along with a co-defendant, named Marina Martin. Both were convicted by a jury in a joint trial and both were sentenced by Judge Rabb to life imprisonment and as indicated above the sentences both were affirmed by the Supreme Court of Indiana 12 years ago.

### II.

Justice DeBruler, speaking for that Court in its initial opinion laid out the basic facts with reference to the offense itself as follows:

The evidence introduced at this trial showed that John Mays was the operator of a Sunoco Service Station located on South Highway 31 in Marion County, Indiana. On March 18, 1982, at about 3

MARCH 24, 1987.

o'clock in the afternoon Mays, dressed in a Sunoco Oil Company work uniform, was working the back bay area of the station when his wife came in from the front office and asked him if he wanted anything from the store. He replied in the negative and his wife went back to the front office. Several seconds later May remembered he wanted cigarettes and walked out to the office to tell his wife. Upon entering the office Mays saw his wife running outside and he immediately followed her asking what was the matter. Mrs. Mays pointed toward a car in the station parking area and said, "They've got our money". Mays told his wife to stay where she was and he went toward the car, which he described as a 1972 red Nova Chevrolet with a black top.

As he approached the car a female, identified by Mays as appellant Martin, was sitting on the passenger's side of the car and a male, whom Mays identified as appellant Thornton, was in the process of entering the driver's seat. Mays grabbed Thornton by the shoulders and, as he did so, Thornton yelled, "Get the gun." Martin reached down to the floor of the car and pointed a .38 caliber revolver at Mays. Mays released Thornton and started to turn away from the car when he was shot in the stomach by Martin. As he fell to the ground by the car Mays heard his wife, "My God you've shot my husband." Five to fifteen seconds later he heard another shot and saw his wife fall to the ground. She was pronounced dead at the Marion County General Hospital as a result of a single gunshot wound in the chest.

Two young employees at a restaurant located adjacent to the station testified that they heard two "popping sounds" from the Sunoco station and saw Mrs. Mays fall to the pavement. A black over red Chevrolet then left the station proceeding South on Highway 31 at a high rate of speed. Both boys testified that they wrote down the license number of the car, but one had forgotten it by the time of the trial. The other boy however, was able to testify to the license number.

At approximately 3:30 that same afternoon an Indiana State Policeman stopped a 1972 black over red Chevrolet Nova with the identical license plate at a point on Highway 31 about twenty miles south of the Sunoco station. Appellants Thornton and Martin were the only occupants of the car. Subsequent searches of appellants shows that Martin had $190 in cash in her underpants and Thornton had $88 in his pockets. Mays testified that there was approximately $220 missing from the cashbox kept in the front office of the gas station.

*Martin v. State*, 314 N.E.2d at 64.

On August 1, 1972 both Martin and Thornton appeared in open court and were informed that their privately retained counsel had withdrawn. Judge Rabb then appointed two lawyers to represent them, stating: "I want two lawyers to represent these people, together or separately, whichever way they would wish." Thornton now claims that this was error in five particulars:

1. Neither defendant was advised of the dangers of dual representation or potential conflicts of interest;

2. There was conflict between the lawyers as to challenges to the jury;

3. Joint representation is a *per se* violation of the constitutional guarantee of effective assistance of counsel;

4. Counsel could not plea bargain the case without conflicting the interests of Martin; and

5. Neither defendant could testify without conflicting the interests of the other.

Apparently both Martin and Thornton who appear to have been represented in the Supreme Court of Indiana by two separate counsel, namely, Palmer K. Ward and David F. McNanar, made the usual argument that joint representation is a *per se* violation of the Sixth Amendment guarantee of effective assistance of counsel.

At this point it is desirable if not necessary to review this court's experience with this issue as reflected in published opinions. In *Ross v. Heyne*, 483 F.Supp. 798

(1980) this court in Part II beginning at page 803 dealt rather gently with the appointment of one defense counsel to represent more than one defendant when such had occurred well before the advent of *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). This court cited and collected the cases then existing in this circuit, two of which this court either then had or later had a judicial connection with. See *U.S. v. Mandell*, 525 F.2d 671 (7th Cir.1975); *U.S. v. Gaines*, 529 F.2d 1038 (7th Cir.1976); *U.S. v. Jeffers*, 520 F.2d 1256 (7th Cir.1975); *U.S. v. Mavrick*, 601 F.2d 921 (7th Cir.1979); and *U.S. ex rel McLindon v. Warden*, 575 F.2d 108 (7th Cir.1978).

When *Ross v. Heyne* reached the Court of Appeals Judge Bauer at 638 F.2d 979, 982 (7th Cir.1980) found an actual conflict of interest and prejudice flowing therefrom and affirmed on that basis, as well as another basis not here relevant.

In *Dean v. Duckworth*, 559 F.Supp. 1331 (1983) this court found ineffective assistance of counsel under *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) and granted a writ under 28 U.S.C. § 2254. This decision was reversed at 748 F.2d 367 (7th Cir.1984) and the basic holding of the Court of Appeals is found at page 370 when it stated:

> Nowhere in our review of the record have we discovered any characteristics of a conflict of interest. We found no action or inaction by defense counsel that was favorable to one defendant at the expense of the other. *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). All of the evidence presented by the prosecution was offered against both petitioners. There was nothing presented that would implicate one more than the other thereby putting defense counsel into the position of having to choose the interest of one over the other. We reject the conclusion inherent in the District Court's opinion that because petitioners did not have identical defenses they necessarily had conflicting defenses. In short, we find no evidence of any actual conflict of interest or any

adverse effect upon trial counsel's performance.

This circuit has clearly rejected that joint representation by one lawyer of more than one defendant charged together in the same criminal case is *per se* violation of the Sixth Amendment. See *U.S. v. Cirrincione*, 780 F.2d 620 (7th Cir.1985), Part II beginning at page 624. See also, *U.S. v. Marrera*, 768 F.2d 201 (7th Cir.1985). However, the factual record in this case simply does not support that conclusion in any event. This court chooses not to bottom any decision on this subject on a *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) waiver.

In all fairness to the late Judge Rabb it should be emphasized that the emergence of the standards announced in *Cuyler* and *Holloway* followed by a good number of years his action in this case. The simple facts of the matter are that Judge Rabb appointed two lawyers to represent two defendants and this court interprets his expressed intent as advising those lawyers that they could work together or separately according to their own professional decisions. Mr. Ward was a renowned criminal defense lawyer in Indianapolis, Indiana and Mr. McNamar was and is considered to be a highly competent and experienced trial lawyer and a member of a law firm that included a former Attorney General of the State of Indiana. These defendants had previously been represented by the *same* privately retained counsel. It was in that factual context that Judge Rabb spoke also. In this regard Justice DeBruler speaking for the Supreme Court stated:

> Appellants' second contention involves the appointment of counsel to represent them. The record in this case reveals that on August 1, 1972, both appellants appeared in court and were informed that their privately retained counsel had withdrawn his appearance. The court then appointed two lawyers to represent appellants and stated:
>
> > "I want two lawyers to represent these people, together or separately, whichever way they would wish."

Appellants now contend that both the manner of the appointment of counsel by the trial court, and the actual conduct of the trial as revealed by the record, indicates that both attorneys jointly represented both defendants and that the United States Supreme Court decision in *Glasser v. United States* (1942), 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, held that joint representation of codefendants is so fraught with dangers of a conflict of interest between the defendants as to be a per se infringement on the effective assistance of counsel. We cannot agree with either that broad interpretation of the *Glasser* case, or that the facts of the case before us demonstrate a conflict of interest between these appellants.

Joint representation of co-defendants is not inherently ineffective and neither the *Glasser* opinion nor cases interpreting that opinion compel a contrary conclusion. In *Glasser* one of the co-defendants objected to the joint representation being forced on him by the court and actually pointed out to the court prior to the trial in what respect his own interest would collide with his fellow defendants:

> "The possibility of the inconsistent interests of Glasser and Kretske were brought home to the court, but instead of jealously guarding Glasser's rights, the court may fairly be said to be responsible for creating a situation which resulted in the impairment of those rights." 315 U.S. at 71, 62 S.Ct. at 465.

Here, on the other hand, no actual conflict or possible conflict was ever enunciated to the court either prior to, or at the trial itself, and none appears on the record of this case. It is only on appeal that appellant Marina Martin has asserted that a possible conflict existed between herself and Thornton because she might have adopted a strategy of pleading to the jury her youth and lack of prior convictions as indications of being overly influenced by Thornton in the commission of the crime. We cannot agree that the possible use of this speculative defense strategy on the part of appellant Martin is of such significance

as to constitute a conflict of interest hindering the effective assistance of counsel. As in most cases the attorneys who tried this case were confronted with many complex questions of judgment. The mere fact that they did not adopt every conceivable defense strategy on behalf of one of their clients cannot be viewed as ineffective representation.

Furthermore in *Glasser*, and all the cases cited by appellants, the factual situation concerned two defendants being represented by one attorney. In our case the trial court appointed two attorneys to represent two defendants in whatever manner they saw fit. Thus the means of separate representation was afforded by the trial court's appointment, while the tactical decision of separate or joint use of counsel was left to the defendants and their attorneys in their best judgment. The dangers of a real conflict of interest interfering with the effective assistance of counsel, therefore, is minor because of the presence of qualified attorneys able to investigate the possibility of conflict and free to represent their clients in whatever way desired. The joint or separate use of counsel in this trial was a judgmental decision made by two informed and qualified attorneys on behalf of their clients and we cannot say now that any apparent conflict of interest adhered to either defendant as a result of that decision. (footnotes omitted)

In *Dently v. Lane*, 665 F.2d 113 (7th Cir.1981) that court postured three questions that are relevant here: (1) Was there joint representation of codefendants? (2) Was there an actual conflict between codefendants? (3) Did the alleged conflict of interest affect the adequacy of legal representation afforded the defendant? The Supreme Court of Indiana speaking through Justice DeBruler found no actual conflict of interest in this record and neither does this court. The factual setting here is vastly different than that found in *Riner v. Owens*, 764 F.2d 1253 (7th Cir.1985). The same is true as to *U.S. ex rel Gray v. Director, Dept. of Correction, State of Ill.*, 721 F.2d 586 (7th Cir.1983).

## III.

The petitioner raises a second issue that does not require this court's extended attention. During an early stage of the trial the state prosecutor had attempted to introduce a gun but Judge Rabb had excluded it on the grounds that it was not closely enough tied to these defendants. Apparently the gun remained on counsel table in an envelope. During the testimony of a fingerprint expert called by the prosecution the prosecutor picked up an envelope which contained the gun. Apparently the gun itself was not visible to the jury. On his own motion Judge Rabb halted the testimony, excused the jury and cautioned the prosecutor against handling the exhibit. Both defense counsel moved for a mistrial which was denied. Justice DeBruler spoke of this issue at page 69 of 314 N.E.2d as follows:

> Appellants next contend that the trial court erred in its failure to grant appellants' joint motion for mistrial which was made as a result of the prosecutor's handling of an envelope containing an exhibit not admitted into evidence. The exhibit with which we are concerned here is a .38 calibre pistol found by the police on the side of the highway a little less than a mile South of the gas station on the evening of the shooting. The prosecution attempted to enter the pistol into evidence but the trial court excluded it on the grounds that it was not closely enough connected with the appellants to be admissible against them. Some time later the prosecution was eliciting testimony from a witness in relation to fingerprints test run on several pieces of evidence when he picked up an envelope with the excluded pistol inside. The trial judge halted the testimony, excused the jury from the room and cautioned the prosecutor against handling that exhibit. At that point appellants moved for a mistrial which was denied. Appellants did not request the judge to admonish the jury to disregard the prosecutor's handling of the envelope.
>
> The decision which circumstances occurring during the course of the trial are so prejudicial as to require the withdrawal

of the case from the jury rests largely with the trial judge. *Duke v. State,* (1968), 249 Ind. 466, 233 N.E.2d 159. Our review of the trial court's rulings on such matters, by its very nature, must concentrate on the peculiar situations and facts of each case as they present themselves. *White v. State* (1971), 257 Ind. 64, 272 N.E.2d 312. The situation confronted by the trial court here does not concern the introduction of a devastating evidentiary harpoon such as in the White case. Nor is this like the facts in *Rohlfing v. State* (1951), 230 Ind. 236, 102 N.E.2d 199, where the prosecution repeatedly and openly displayed to the jury exhibits which had been excluded by the trial court. The facts here indicate that the only item handled by the prosecution was a brown envelope within which was the evidence and there is no indication that the jury knew or could have easily discerned what was inside the envelope. Moreover the court, on its own motion, immediately excused the jury and cautioned the prosecutor against such tactics. Since it is not clear that the jury was even aware of the contents of the envelope, or that the prosecutor's conduct prejudiced appellants, the trial court was correct in its denial of their motions for a mistrial.

■ The late Judge Saul I. Rabb was an extremely experienced criminal court trial judge who had a passion for competence and due process. He always maintained a firm but fair hand on criminal proceedings and certainly that was the case here. The findings of fact which were made by the Supreme Court in regard to this are presumed correct under 28 U.S.C. § 2254(d) and under *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). There was no prejudice shown here whatsoever.

In the Traverse filed April 2, 1986 there is mention of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) in regard to the harmless error concept. This court remains bound by the harmless error analysis of Judge Flaum speaking for an en banc majority in *U.S. ex rel Miller v. Greer,* 789 F.2d 438 (7th Cir.1986), Part III

at pages 442–447. Compare, the concurring opinion of Justice Blackmun, joined by Justice Powell in *Morris v. Mathews*, 475 U.S. 237, 106 S.Ct. 1032, 89 L.Ed.2d 187 (1986). This court should make it clear that it is not bottoming any decision in this case on that concept. There is no basis presented in this record for the granting of a writ under 28 U.S.C. § 2254 and such writ is now DENIED.