OPINION
{¶ 1} Defendant-appellant, Robert O. Edwards, appeals from the judgment of the Franklin County Court of Common Pleas convicting him of possession of crack cocaine in violation of R.C. 2121.332, a felony of the fifth degree.
 {¶ 2} On October 10, 2003, Sergeant Weiner and Officer Capretta of the Columbus Police Department were working on patrol in a marked police cruiser on Chapel Street in Franklinton. The officers observed a white car, that had dealer tags bolted to it, circle the block two times. When the car returned a third time, the officers initiated a traffic stop. Appellant, the owner and driver of the car, pulled over and shut off the car's engine as requested by the officers. However, when appellant informed the officers that he did not have a license, appellant started the engine and sped away. After driving erratically in an attempt to elude the officers, appellant was forced to stop in a construction zone. Appellant was apprehended, and Sergeant Weiner noticed several small, round, white rock substances dispersed on the driver's seat, on the floor of the driver's area, and on a portion of the passenger's seat closest to the driver. Sergeant Weiner suspected that the substance was cocaine, and a field test confirmed his suspicion.
 {¶ 3} On February 10, 2004, appellant was indicted by a Franklin County Grand Jury on one count of possession of cocaine, a fifth-degree felony, and one count of failure to comply with police order. The failure to comply charge was dismissed as the result of defendant's guilty plea to a first-degree misdemeanor charge in Franklin County Municipal Court.
 {¶ 4} On August 28, 2004, appellant took a polygraph examination conducted by retired Ohio State Highway Patrol Lieutenant Wells. Appellant received favorable results, and on September 2, 2004, appellant filed a motion to compel the prosecutor to stipulate to the results of the polygraph examination, or alternatively to allow the introduction of the results. On October 27, 2004, the trial court heard testimony regarding the results of the polygraph examination and deferred ruling on its admissibility. On January 14, 2005, appellant waived his right to trial by jury and agreed to have the case tried to the court. At trial, Sergeant Wiener was the only witness to testify, and after presentation of appellee's case, the defense rested without putting on any evidence.
 {¶ 5} On February 11, 2005, the trial court found the polygraph results inadmissible pursuant to State v. Souel
(1978), 53 Ohio St.2d 123. Further, the trial court found that even if the requirements of Souel had been met, the polygraph results were inadmissible because appellant did not testify. Also on February 11, 2005, the trial court filed a separate judgment entry finding appellant guilty of one count of possession of cocaine, a felony of the fifth degree in violation of R.C.2925.11. Thereafter, on April 4, 2005, appellant was placed on community control for five years.
 {¶ 6} On appeal, appellant raises the following three assignments of error:
[1.] Appellant received ineffective assistance of counsel insofar as counsel failed to adequately establish a foundation for consideration of polygraph results in the event the court determined they were admissible under the circumstances of this case.
[2.] The evidence was legally insufficient to support appellant's conviction as the state failed to prove the element of knowledge.
[3.] Appellant's conviction was against the manifest weight of the evidence.
 {¶ 7} In his first assignment of error, appellant argues that he did not receive effective assistance of counsel at trial. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington
(1984), 466 U.S. 668, 686, 104 S.Ct. 2052. In order to establish a claim of ineffective assistance of counsel, a defendant must first demonstrate that his trial counsel's performance was so deficient that it was unreasonable under prevailing professional norms. Id. at 687. The defendant must then establish "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
 {¶ 8} According to Strickland:
A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Id. at 687.
 {¶ 9} "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id. at 689, quotingMichel v. Louisiana (1955), 350 U.S. 91, 101, 76 S.Ct. 158. A verdict adverse to a criminal defendant is not of itself indicative that he received ineffective assistance of trial counsel. State v. Hester (1976), 45 Ohio St.2d 71, 75.
 {¶ 10} Appellant argues that his trial counsel's performance was deficient because his counsel failed to call appellant as a witness in order to lay the proper foundation for consideration of the results of the polygraph if the trial court determined that they were admissible. Appellant also alleges that there was a "mutual misunderstanding" as to the necessity of appellant's testimony.
 {¶ 11} In support of his argument that there was a mutual misunderstanding regarding appellant's need to testify, appellant relies on the following exchange that took place at the time the polygraph examiner, Lieutenant Wells, was being excused as a witness.
THE COURT: Thanks for your testimony. You are excused.
[APPELLANT'S COUNSEL]: I'm thinking from the — if I may, before he is excused totally, I take it there is no need for us to call him as a witness.
THE COURT: If I would decide that the testimony were appropriate, I'll issue a written decision on that basis. Then I would incorporate what he has already testified in my decision making process. In other words, I have heard the testimony. If I think it's appropriate to consider it — I have already heard it. I don't have to call him back to testify.
I might say this too, Mr. McGrath [the prosecutor], you say I'm the trier of fact. I already know what he is going to testify.
[THE STATE]: I know.
[APPELLANT'S COUNSEL]: You don't think I would have to call him now?
[THE STATE]: As soon as he wrote the motion, I knew, you know, you knew the answer.
THE COURT: Thanks, Mr. Wells [the polygraph examiner].
(Jan. 14, 2005 Tr. 21-22.)
 {¶ 12} We find that the above dialogue does not support appellant's position. Initially, we note that there appears to be no confusion regarding the testimony of appellant, as the above exchange is clearly centered around the testimony of Lieutenant Wells, the polygraph examiner, and the potential need for him to be called again, not appellant. Additionally, there is nothing in the record regarding whether or not appellant needed to be called as a witness in order for the court to consider the testimony of the polygraph examiner. It is reasonable to assume that appellant's not testifying was the result of sound trial strategy. See State v. Wiley, Franklin App. No. 03AP-340,2004-Ohio-1008 (holding that the decision whether to call a defendant as a witness falls within the purview of trial strategy), citing State v. Adkins (2001), 144 Ohio App. 3d 633,646; State v. Coulverson, Franklin App. No. 01AP-893, 2002-Ohio-1324.
 {¶ 13} Secondly, despite appellant's contention, the trial court's decision on the admissibility of the polygraph results was not based on the fact that defendant had not testified, but rather, it was based on the fact that the requirements ofSouel, supra, were not met. In Souel, as applied by this court in State v. Lascola (1988), 61 Ohio App.3d 228, 233, as the "leading case in Ohio on the admissibility of polygraph results," the Supreme Court of Ohio set forth several conditions that must be satisfied in order to make the results of a polygraph test of the defendant admissible. The syllabus inSouel states:
The results of a polygraphic examination are admissible in evidence in a criminal trial for purposes of corroboration or impeachment, provided that the following conditions are observed:
(1) The prosecuting attorney, defendant and his counsel must sign a written stipulation providing for defendant's submission to the test and for the subsequent admission at trial of the graphs and the examiner's opinion thereon on behalf of either defendant or the state.
(2) Notwithstanding the stipulation, the admissibility of the test results is subject to the discretion of the trial judge, and if the trial judge is not convinced that the examiner is qualified or that the test was conducted under proper conditions he may refuse to accept such evidence.
(3) If the graphs and examiner's opinion are offered in evidence the opposing party shall have the right to cross-examine the examiner respecting:
(a) the examiner's qualifications and training;
(b) the conditions under which the test was administered;
(c) the limitations of and possibilities for error in the technique of polygraphic interrogation; and,
(d) at the discretion of the trial judge, any other matter deemed pertinent to the inquiry.
(4) If such evidence is admitted the trial judge should instruct the jury to the effect that the examiner's testimony does not tend to prove or disprove any element of the crime with which a defendant is charged, and that it is for the jurors to determine what weight and effect such testimony should be given.
 {¶ 14} In the case sub judice, the trial court's entry states, in part:
The State of Ohio argues that the prosecuting attorney, the defendant and his counsel, have not signed a written stipulation providing for the defendant's submission to the test and for the subsequent admission at trial of the graphs and the examiner's opinion thereon on behalf of either the defendant or the State. That stipulation having not been entered into by the defendant and/or the State, the polygraphic examination according to the holding in Souel is not admissible. The Court agrees with the holding [in] Souel and with the State's argument.
Further, even though it is the Defendant's constitutional right not to take the stand since he did not testify, it would be improper to allow such evidence in the record. Basically, it would allow the Defendant to offer his testimony, through the polygraphic examination, without having to submit to cross-examination.
(Feb. 11, 2005 Entry, at 3; emphasis sic.)
 {¶ 15} The trial court's entry indicates that even if the requirements of Souel had been met, the polygraph results would have been excluded because appellant did not testify. However, whether or not the trial court would have exercised its discretion and excluded the polygraph results because of appellant's failure to testify is irrelevant because the polygraph results were clearly inadmissible due to the lack of a pre-test stipulation by the parties regarding appellant's submission to the test and the use of the test results at trial.Souel contemplates a pre-test stipulation by the prosecutor, the defendant and his counsel, and such did not occur in this case. See State v. Jamison (1990), 49 Ohio St.3d 182, 190. Therefore, regardless of appellant's failure to testify, the polygraph results would not have been admitted at trial because there was no pre-test stipulation.
 {¶ 16} Appellant argues that appellee's refusal to enter into a stipulation for "merely tactical reasons" is a denial of due process. In support of his position, appellant relies onMcMorris v. Israel (C.A.7, 1981), 643 F.2d 458, holding that in the circumstances of that particular criminal trial, the state prosecutor's unrestricted veto over the use of polygraph evidence was constitutionally infirm. However, as noted by appellee, for the trial court to have followed McMorris would have required the trial court to abandon the precedent of this state as set forth in Souel. Secondly, we note that the court in McMorris
was construing a Wisconsin statute in a federal habeas proceeding on a subject that was later overturned by the Wisconsin Supreme Court. See State v. Dean (1981), 103 Wis.2d 228. Thirdly, upon review of the McMorris case, we are not persuaded by its reasoning, and instead adhere to the rule set forth in Souel,
as did the Fourth District Court of Appeals in State v. Wooten
(June 29, 1989), Athens App. No. 1359.
 {¶ 17} Pursuant to Souel, because there was no pre-test stipulation by the parties regarding a polygraph examination, the results were not admissible. See, also, United States v. Beck
(C.A.11, 1984), 729 F.2d 1329, 1332 (noting that a stipulation should be sought prior to any test being administered due to the obvious unfairness of allowing a defendant to "test the waters before he sought a stipulation, and require the prosecutor to so stipulate when the defendant had favorable results, yet allow the defendant to refuse such a stipulation when the results were unfavorable"). Thus, the fact that appellant did not testify is not relevant to the issue of the test's ultimate admissibility in this case because the results were inadmissible under Souel.
Further, the record reflects that appellant's trial counsel was aware of the requirements of Souel, and, therefore, appellant's choosing to go forward with the polygraph examination without first obtaining a stipulation from appellee may have been the result of sound trial strategy. It is perfectly reasonable to assume that the defense was unwilling to stipulate to a polygraph exam for fear that it would be compelled to have the results admitted if they were unfavorable. In fact, in the opposite scenario, i.e., when there is a pre-test stipulation, the polygraph results are unfavorable, and appellants argue that their counsel was ineffective for stipulating to the polygraph examination, this court has recognized that "a defendant's counsel `must use utmost caution in determining whether to stipulate to the admissibility' of polygraph results." State v.Fisk, Franklin App. No. 01AP-1193, 2002-Ohio-2776, at ¶ 71, quoting State v. Lascola (1988), 61 Ohio App.3d 228, 235
(emphasis sic.). Additionally, as noted by appellee, there is no indication as to whether or not appellant underwent additional polygraph examinations with favorable, or unfavorable, results, hence the necessity of a pre-test stipulation.
 {¶ 18} Finally, we find that appellant is not able to establish prejudice from trial counsel's failure to obtain a stipulation prior to taking the polygraph exam because appellant is unable to show that the trial court would have admitted the results even if there had been a stipulation, and the requirements of Souel had been met. As stated in Souel, it is within the trial court's discretion to admit the polygraph test results, even with a stipulation in place. Id. at syllabus. Further, there is no indication that the trier of fact would have given this evidence any weight had the results been admitted. While "polygraph evidence is potentially susceptible to being given undue weight by a [trier of fact]," we cannot say that the trial court would have acquitted appellant if the evidence had been admitted. Fisk, supra, at ¶ 70 (emphasis sic.).
 {¶ 19} Finding that appellant has failed to establish either prong of the Strickland test, we cannot conclude that appellant has demonstrated a deficient performance by his trial court. Accordingly, appellant's first assignment of error is overruled.
 {¶ 20} Through his second assignment of error, appellant argues that the evidence was legally insufficient to support his conviction. In his third assignment of error, appellant argues that his conviction is against the manifest weight of the evidence. Because these two assignments of error are interrelated, we will address them together.
 {¶ 21} The Supreme Court of Ohio described the role of an appellate court presented with a sufficiency of the evidence argument in State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus:
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307, 99 S.Ct. 2781,61 L.Ed.2d 560, followed.)
 {¶ 22} Whether the evidence is legally sufficient is a question of law, not fact. State v. Thompkins (1997),78 Ohio St.3d 380, 386. In determining the sufficiency of the evidence, an appellate court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v. Virginia (1979),443 U.S. 307, 319, 99 S.Ct. 2781. Consequently, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. State v. Yarbrough,95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 79; State v. Thomas
(1982), 70 Ohio St.2d 79, 80. Thus, a jury verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. State v. Treesh (2001), 90 Ohio St.3d 460, 484; Jenks,
supra.
 {¶ 23} A manifest weight argument is evaluated under a different standard. "The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other."State v. Brindley, Franklin App. No. 01AP-926, 2002-Ohio-2425, at ¶ 16, citation omitted. In order for a court of appeals to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court must disagree with the fact finder's resolution of the conflicting testimony. Thompkins, supra, at 387. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id., quotingState v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 24} A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21. The determination of weight and credibility of the evidence is for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230. The rationale is that the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible.State v. Williams, Franklin App. No. 02AP-35, 2002-Ohio-4503, at ¶ 58; State v. Clarke (Sept. 25, 2001), Franklin App. No. 01AP-194. The trier of fact is free to believe or disbelieve all or any of the testimony. State v. Jackson (Mar. 19, 2002), Franklin App. No. 01AP-973; State v. Sheppard (Oct. 12, 2001), Hamilton App. No. C-000553. Consequently, although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must give great deference to the fact finder's determination of the witnesses' credibility. State v. Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037, at ¶ 22; State v. Hairston, Franklin App. No. 01AP-1393, 2002-Ohio-4491, at ¶ 17.
 {¶ 25} In support of his argument that the evidence was insufficient to convict him, appellant contends that the evidence does not establish that he knowingly possessed the cocaine in his car.
 {¶ 26} In this case, appellant was convicted of violating R.C. 2925.11, which provides that no person shall knowingly obtain, possess, or use a controlled substance. Possession, as defined by R.C. 2925.01(K), means "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C.2901.22(B) provides that "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 27} "Absent an admission by defendant, the surrounding facts and circumstances, including defendant's action, determine whether defendant knowingly possessed cocaine." State v. Baker,
Franklin App. No. 02AP-627, 2003-Ohio-633, at ¶ 23. Possession of a controlled substance may be actual or constructive. State v.Hughes, Franklin App. No. 02AP-1208, 2003-Ohio-2317, at ¶ 22. A person has actual possession of an item when it is found within his or her immediate physical control. Id. A person has constructive possession when he or she knowingly exercises dominion and control over an object, even though the object may not be within his immediate physical possession. Id. If the evidence demonstrates that a defendant was able to exercise dominion or control over contraband, that defendant can be convicted of possession. Id. at ¶ 24. "Circumstantial evidence alone may be sufficient to support the element of constructive possession. * * * The discovery of readily accessible drugs in close proximity to a person constitutes circumstantial evidence that the person was in constructive possession of the drugs." Id. (citations omitted).
 {¶ 28} In the case sub judice, it was stipulated that the substance found in the car was cocaine. Sergeant Weiner's testimony established that the cocaine was found on the driver's seat, on a portion of the passenger's seat closest to the driver's area, and driver's side floor. His testimony also establishes that appellant was driving the car in which the cocaine was found. Additionally, after appellant circled the block three times, in an area known for drug activity, the officers stopped appellant for a traffic violation, and appellant fled the scene at a high rate of speed and drove erratically in an apparent attempt to avoid the police. Appellant was the only occupant of the vehicle.
 {¶ 29} Appellant has conceded that flight may imply some sort of guilty knowledge, but goes on to suggest that, in this case, appellant fled due to the fact that he had no license and nine prior arrests for driving under suspension. However, merely because appellant may have known he was driving illegally does not equate, or suggest, that he had no knowledge of the cocaine.
 {¶ 30} Viewing the evidence in a light most favorable to the prosecution, the evidence adduced at trial provides a sufficient basis upon which the trier of fact could reasonably conclude that appellant knowingly possessed crack cocaine. The trier of fact's conclusion is very reasonable, given that appellant was driving his car, wherein cocaine was found dispersed on the seats and floor of the driver's area of the car.
 {¶ 31} Moreover, we conclude that the verdict is not against the manifest weight of the evidence. The weight to be given to the evidence and the credibility of the witnesses are determinations that are primarily for the trier of fact. SeeDeHass, supra, at paragraph one of the syllabus. Here, there is no indication that the trial court lost its way or created a manifest miscarriage of justice in convicting appellant of possession of crack cocaine.
 {¶ 32} Accordingly, we overrule appellant's second and third assignments of error.
 {¶ 33} For the foregoing reasons, appellant's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
Petree and Brown, JJ., concur.